# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JESSICA J. DIETRICH,

    Plaintiff,

v.                                                          Case No. 07-C-0193

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Jessica J. Dietrich, commenced this action on February 28, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## PROCEDURAL HISTORY

On December 2, 2002, the plaintiff filed an application for disability insurance benefits and supplemental security income, alleging that she became disabled on January 3, 2002, due to a fractured back of the neck, chronic neck pain and other problems related to injuries

sustained in three separate car accidents. The plaintiff's applications were denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on July 21, 2006. The plaintiff, represented by counsel, appeared and testified, as did Dr. Ashok Jilhewar, a medical expert, and Ronald Kakettl, a vocational expert.

In a September 12, 2006, decision, the ALJ found that the plaintiff was not disabled. The ALJ concluded that the plaintiff has severe medical impairments consisting of status post fracture of the vertebral column and cervical fusion, myofascial pain, and chronic pain syndrome, but that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13). The ALJ further found that the plaintiff had "the residual functional capacity to perform sedentary work with a sit/stand option; with limited stooping, twisting , crouching, kneeling, and climbing of stairs or ramps; no balancing or climbing of ladders or scaffolds; avoidance of hazards such as heights, vibrations, and dangerous machinery; and in a low stress environment." (Tr. 14). The ALJ determined that given the plaintiff's residual functional capacity (RFC), the plaintiff could not perform her past relevant work.

The ALJ then determined that considering the plaintiff's age, education, work experience, and residual functional capacity, she was capable of making a successful adjustment to other work that exists in significant numbers in the national economy such as telemarketer, receptionist and parking lot attendant. (Tr. 16-17). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

**APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a plaintiff must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently unemployed; 2) whether the plaintiff has a severe impairment; 3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff possesses the residual functional capacity (RFC) to perform her past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience. See Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993). If a plaintiff satisfies steps one, two and three, she will automatically be found disabled. If a plaintiff satisfies steps one and two, but not three, then she must demonstrate that she lacks the residual functional capacity to perform her past work. Once step four is satisfied, the burden

3

shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy. Knight, 55 F.3d at 313. The plaintiff bears the burden at steps one through four, after which at step five, the burden shifts to the Commissioner. Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). The process is sequential, and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than her vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-8.

4

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work she is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence

5

supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

In this case, the ALJ conducted the standard five-step evaluation process to determine whether the plaintiff is disabled. On appeal, the issues presented by the plaintiff arise at the fourth and fifth steps of the sequential evaluation. The plaintiff asserts that in determining the plaintiff's residual functional capacity, the ALJ erred by failing to give any weight to the medical opinion of the plaintiff's treating source physician. The plaintiff also asserts that the ALJ erred by not expressly assessing the credibility of the plaintiff's statements and by failing to articulate specific reasons to support his credibility finding. The plaintiff further maintains that the ALJ's determination of the plaintiff's residual functional capacity is not supported by substantial evidence.

In response, the Commissioner asserts that substantial evidence support the ALJ's decision. The Commissioner contends that the ALJ was correct in affording no weight to the opinion of the plaintiff's treating physician because, as noted by the ALJ, the opinion was not consistent with the physician's own clinical notes and not based on objective tests. The Commissioner also contends that the ALJ reasonably determined that the plaintiff's claims were not credible to the extent that they preclude a range of sedentary work and that he adequately articulated reasons for that determination. Finally, the Commissioner asserts that the ALJ's residual functional capacity assessment was reasonably supported by the opinions of the medical expert, the state agency physician and the medical consultant.

6

**1. Whether The ALJ Properly Evaluated the Opinion of the Plaintiff's Treating Physician.**

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by the medical findings and consistent with other substantial evidence in the record. Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001); Clifford, 227 F.3d at 870; see also 20 C.F.R. § 404.1527(d)(2); SSR 96-8p. "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Knight, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527[c]; Luna v. Shalala, 22 F.3d 687, 690 [7th Cir. 1994]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 [10th Cir. 1994]). The ALJ "must articulate, at some minimum level, [his] analysis of the evidence. Dixon, 270 F.3d at 1176 (citing Zurawski, 245 F.3d at 888). The ALJ is not required to address every piece of evidence or testimony, but the ALJ must provide "some glimpse into [his] reasoning." Id. An ALJ may discount a treating doctor's medical opinion if it is internally inconsistent, as long as he "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." Skarbek, 390 F.3d at 503 (quoting Clifford, 227 F.3d at 870).

Under the applicable regulations, the ALJ is required to explain the weight given to the opinions of treating physicians. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). In any event, a treating physician's statement that the claimant is disabled cannot itself be conclusive; the ultimate determination of whether a claimant is disabled is "reserved to the Commissioner." See 20 C.F.R. § 404.1527(e)(1); see also, Dixon, 270 F.3d at 1177 ("[A] claimant is not entitled to disability benefits simply because her physician states that she is

7

'disabled' or unable to work. The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." [internal citations omitted]).

Section 404.1527(d) states that when the ALJ does not give the treating source's opinion controlling weight, the ALJ will apply factors as set forth in the regulations. The factors to be considered are the examining and treatment relationship, the frequency of examinations, the nature, length, and extent of the treatment relationship, the supportability of a particular opinion, its consistency with the record as a whole, the specialization of the physician, and other factors. 20 C.F.R. § 404.1527(d)(1)-(6); see, Dominguese v. Massanari, 172 F.Supp.2d 1087, 1100 (E.D. Wis. 2001).

In this case, Gerald Sullivan, M.D., who had treated the patient for approximately eleven years, completed a Medical Assessment Form on July 17, 2006, in which he indicated that the plaintiff suffered from chronic neck pain and spasms that radiated to the head and shoulders, causing the plaintiff to be unable to bend at the neck or use her arms. (Tr. 235-37). On the form, Dr. Sullivan categorized the pain in the plaintiff's upper extremities as moderate, as opposed to mild or severe. (Tr. 237). Dr. Sullivan opined that the plaintiff could walk for six blocks without a rest or severe pain, sit for 30 minutes continuously, stand for one hour continuously and stand or walk for about four hours out of an eight hour work day. (Tr. 235-36). He noted that the plaintiff had no side effects from her medications. (Tr. 136). Dr. Sullivan further opined that the plaintiff has tenderness, pain, muscle weakness, and limitation of motion in her upper extremities, but not joint warmth, joint swelling or deformity or reduced grip strength. Id. Dr. Sullivan further opined that the plaintiff could not do any reaching with her arms, could do fine finger manipulations for about 10% of an eight-hour work day and could use

8

her hands for grasping, turning, and twisting objects for about 20% of an eight-hour workday. (Tr. 237).

The ALJ gave "no weight" to this document. Instead, the ALJ relied on the testimony of the medical expert, Dr. Jilhewar, who testified that Dr. Sullivan's assessment was "not based on objective medical tests" and was "inconsistent with Dr. Sullivan's own clinical notes." (Tr. 15). In so concluding, the ALJ relied on the medical evidence in the record, including treatment notes from Dr. Sullivan. The ALJ observed that a CT scan in 2000 showed soft tissue injuries, but no evidence of fractures (Tr. 196), that a consulting doctor found cervical pain that was muscular in nature in 2002 (Tr. 172), that an X-ray of her right knee was normal in 2003 (Tr. 212), and that her motor functions in 2004 were normal. (Tr. 242).

The ALJ also reviewed the entire record in making his determination regarding the weight to give Dr. Sullivan's opinion. The ALJ noted that the opinion on the medical survey form was inconsistent with Dr. Sullivan's own clinical notes. On August 6, 2002, Dr. Sullivan's notes indicated that the plaintiff's pain was controlled and that the plaintiff wanted to return to work. (Tr. 181). On October 9, 2002, the plaintiff had a fair prognosis, could stand or walk for six hours during an eight-hour day, had an "excellent" ability to use her hands, communicate and see, had no sitting restrictions and no other restrictions, (Tr. 170-71).

On September 3, 2003, the plaintiff was working four hours a day with some neck pain. (Tr. 321). On March 3, 2004, the plaintiff's neck pain was well-controlled. (Tr. 327). On June 13, 2005, Dr. Sullivan noted that the plaintiff's condition may be improved through massage therapy. (Tr. 288). On August 1, 2005, the plaintiff was needing less pain medications. (Tr. 292). On October 3, 2005, the plaintiff's hand grasp was strong and equal, although her neck

9

muscles were more tight than usual. (Tr. 295). On December 26, 2005, the plaintiff was "getting fairly good pain relief." (Tr. 299).

The ALJ also considered the objective medical findings in the records submitted by Robert Zoeller, M.D., of Sacred Heart Rehabilitation Institute, and Verma Medical Services. The report from Dr. Zoeller, dated February 12, 2003, noted that the plaintiff had a normal gait, a full range of motion in her hips and knees with pain on end ranges, a limited range of motion in her neck and normal muscle strength in her upper and lower extremities. Dr. Zoeller also performed a battery of special tests that produced no significant results. (Tr. 210). The report from Verma Medical Services, dated June 4, 2004, indicated that the plaintiff had a normal gait and an ability to undergo exercise testing and/or participate in an exercise program. (Tr. 242). She also had the ability to bend down, but a decreased range of motion in her head and neck. Dr. Sullivan's clinical notes show no evidence of objective tests.

The ALJ discussed that the state agency physician, who completed a Psychiatric Review Technique (PRT) form on February 27, 2003, found that the plaintiff does not have a severe psychiatric impairment. (Tr. 16, citing Exh. 5F). The ALJ further discussed that the state agency physician, along with a medical consultant, also found that the plaintiff could perform sedentary work. (Tr. 16 citing Exh. 4F). Dr. Jilhewar, the medical expert, agreed with the state agency physician's assessment. (Tr. 16). The state agency physicians and the medical expert are consistent with the ALJ's finding of residual functional capacity.

The plaintiff argues that the ALJ specifically failed to reference the factors set forth in SSR 96-2p. However, a careful reading of the ALJ's decision demonstrates that the ALJ did consider the relevant factors. He specifically cited medical evidence in the record which called into question Dr. Sullivan's conclusion about the plaintiff's medical impairments and her inability

10

to perform sedentary employment. Based on his assessment of the medical evidence, the ALJ concluded that Dr. Sullivan's statements in the form were not supported by the medical record. As previously noted, the ALJ also considered other evidence in the record. He observed that the medical expert, who reviewed the record, found that in an eight hour workday, the plaintiff retained the capacity to perform sedentary work. Based on the foregoing, the court concludes that the ALJ adequately articulated his reasons for giving no weight to Dr. Sullivan's opinion.

The plaintiff argues that even if Dr. Sullivan's opinion is not given controlling weight, SSR 96-2p requires that it is entitled to deference and it must be weighed using all the factors of 20 C.F.R. § 404.1527(d), with specific articulations concerning each listed factor. The plaintiff, however, misconstrues the language of SSR 96-2p. First, if the treating source's medical opinion is not accorded controlling weight, SSR 96-2p merely states that "it may still be entitled to deference and be adopted by the adjudicator." Second, there is no requirement that the ALJ speak to each specific factor, but only that the ALJ give specific and clear reasons for the weight given to the opinion, and that those reasons must be supported by evidence in the record and sufficient to allow for subsequent review. See SSR 96-2p.

In conclusion, the ALJ adequately articulated his reasons for discounting the medical evidence submitted by Dr. Sullivan. The court finds that there is substantial evidence in the record, provided by the state agency physicians, the medical expert and other physicians that occasionally treated the plaintiff, to support the ALJ's conclusions as to the weight to give to Dr. Sullivan's opinion. The court will not disturb the ALJ's finding.

**2.      Whether the ALJ Properly Evaluated the Plaintiff's Credibility.**

The plaintiff contends that the ALJ failed to follow the standards of SSR 96-7p when making his credibility determination concerning the testimony of the plaintiff. Specifically, the

11

plaintiff asserts that the ALJ erred in failing to discuss the specific factors in SSR 96-7p when evaluating the credibility of her testimony about her ability to perform work activities. The Commissioner counters that the ALJ considered the plaintiff's impairments and reasonably determined that the plaintiff's subjective symptoms were not credible to the extent that they preclude a range of sedentary work.

Pursuant to SSR 96-7p, the ALJ's determination or decision regarding a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Zurawski, 245 F.3d at 887 (quoting SSR 96-7p). The court further stated that "[i]n this regard it is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that ' the allegations are (or are not) credible.'" Id. at 887. It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. Id. The ALJ must build an accurate and logical bridge from the evidence to the conclusion. Dixon, 270 F.3d at 1176; Clifford, 227 F.3d at 872.

In this case, the ALJ specifically mentioned SSR 96-7p and his decision reveals that he considered the relevant factors. He considered the plaintiff's daily activities, noting that she cares for her four-year old son, goes to the beach and takes walks in the park with him. (Tr. 15). The ALJ discussed the plaintiff's other activities which include pushing her child in a stroller, doing water therapy, doing crafts at home, grocery shopping, cleaning her home with assistance from her son, reading and watching television. She also attends church and visits with family and friends. The ALJ further noted that the plaintiff testified that she cannot pick up

12

her child, must lie down during the day and requires assistance from her boyfriend to wash her hair and do housework. The ALJ stated that the plaintiff testified to minimal standing and walking in a typical day, but he observed that the objective evidence in the record failed to corroborate this testimony. The ALJ concluded that the "claimant has a full range of daily activities that belie her allegations of total disability." (Tr. 15).

The ALJ properly considered the objective medical evidence, as well as the non-medical evidence, when he discounted the plaintiff's subjective complaints. See Dixon, 270 F.3d at 1178. The ALJ adequately considered the relevant factors in making his credibility determination. The ALJ's credibility determination is entitled to special deference because the ALJ is in the best position to see and hear the plaintiff and assess her forthrightness. Powers, 207 F.3d at 435. Therefore, the court concludes that the ALJ's credibility assessment is not patently wrong and must be upheld. See Zurawski, 245 F.3d at 887 (citing Powers, 207 F.3d at 435).

**3. Whether ALJ the Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence.**

The plaintiff contends that the ALJ's finding relating to the plaintiff's residual functional capacity is not supported by substantial evidence. The Commissioner argues that the ALJ, contrary to the plaintiff's assertion, considered the medical evidence of record, and in particular, properly relied on the opinion of the medical expert at the hearing who found that the plaintiff could perform sedentary work. The Commissioner also notes that the ALJ reasonably relied on the opinions of the state agency physician and medical consultant who concluded that the plaintiff could do sedentary work.

13

The legal standard for residual functional capacity is set forth in Patterson v. Barnhart, 428 F. Supp. 2d 869, 885-86 (E.D. Wis. 2006). Residual functional capacity is the most an individual can do despite his impairments, on a regular and continuing basis, i.e., eight hours a day for five days a week, or an equivalent work schedule. See 20 C.F.R. § 404.1545. In determining a plaintiff's RFC, the ALJ must consider both the "exertional" and "non-exertional" capacities for the individual. Exertional capacity refers to the plaintiff's abilities to perform seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional capacity includes all work-related functions that do not depend on the individual's physical strength: postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking) and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) activities. Patterson, 428 F.Supp.2d at 885.

The plaintiff's residual functional capacity is used to determine her ability to engage in various levels of work (sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." Patterson, 428 F.Supp.2d at 885-86. The ALJ must also explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. See SSR 96-8p.

Section 404.1546 provides that at the ALJ hearing level, the responsibility for deciding an individual's residual functional capacity rests with the ALJ. See 20 C.F.R. § 404.1546. Under such regulation, the ALJ need not base his decision solely upon the opinions of physicians and does not make a "medical judgement" when determining residual functional capacity. See Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The ALJ is also allowed

14

to conclude that there was not adequate clinical support for the opinions of the plaintiff's treating physicians on their residual functional capacity forms. See Knight, 55 F.3d at 314.

In this case, the ALJ determined that the plaintiff "has the residual functional capacity to perform sedentary work with a sit/stand option; with limited stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no balancing or climbing of ladders or scaffolds; avoidance of hazards such as heights, vibration, and dangerous machinery; and in a low stress environment." (Tr. 14). The plaintiff asserts that the ALJ failed to include additional limitations associated with the plaintiff's chronic neck pain, specifically those related to digital manipulation and neck movement.

In determining the plaintiff's residual functional capacity, the ALJ considered all of the plaintiff's symptoms and how those symptoms would reasonably be consistent with the objective medical evidence in the record. Dr. Zoeller found that the plaintiff could sit for four to five hours, stand for one hour, had a normal gait and a full range of motion in her knees and hips, although she had pain on end ranges. Dr. Zoeller reported that he would place no restrictions on fine finger manipulation or repetitive movement of the upper extremities. (Tr. 210-12). Other tests pertaining to the plaintiff's strength and motion were negative, although she did have a limited range of motion in her neck. See Tr. 210-12.

The ALJ observed that records from Verma Medical Services in 2004 showed the plaintiff's motion function was normal. Those records show that the plaintiff had a normal gait, was able to bend down, had a decreased range of motion in her head and neck, but was able to undergo exercise testing and/or participate in an exercise program. (Tr. 242).

Dr. Jilhewar, the medical expert at the hearing, found that the plaintiff could perform sedentary work, as did the state agency physicians. (Tr. 15-6, 56, 213-220). The ALJ properly

15

relied on the opinion of Dr. Jilhewar which was supported by the state agency physicians. White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005). (testimony of medical expert buttressed by the state agency physician properly provided adequate evidentiary foundation for ALJ's evaluation of residual functional capacity).

The ALJ considered the medical assessment form completed by Dr. Sullivan, but determined that no weight would be given to this document. As discussed herein, this determination is reasonably supported by the record. The ALJ also considered the testimony of the plaintiff concerning her daily activities. The plaintiff was able to care for her son, take him for walks to the park and the beach and do crafts and other activities. The ALJ found her testimony not credible to the extent that her condition precluded all work activities. This determination is also reasonably supported by the record. This court has the authority to review the decision of the ALJ to determine if it is reasonably supported by the record; it may not weigh the evidence anew. See Powers, 207 F.3d at 434. The ALJ's determination of residual functional capacity finding is supported by substantial evidence and will not be disturbed.

In sum, the ALJ properly evaluated the evidence in the record and adequately articulated his reasons for denying the plaintiff's claims for disability benefits. Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled. Therefore, the plaintiff's appeal will be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this case be and here is **dismissed**.

16

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of January, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge